UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| TRUNG HUA AND RONALD LEIMKUHLER, | CIV. NO. 23-00424 LEK-WRP |
| Plaintiffs, | |
| vs. | |
| ASSOCIATION OF APARTMENT OWNERS OF WAIKIKI BANYAN, | |
| Defendant. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS TRUNG HUA AND RONALD LEIMKUHLER'S
COMPLAINT, FILED HEREIN ON OCTOBER 16, 2023**

Before the Court is Defendant Association of Apartment Owners of Waikiki Banyan's ("the Association") Motion to Dismiss Trung Hua and Ronald Leimkuhler's Complaint, Filed Herein on October 16, 2023 ("Motion"), filed on May 29, 2024. [Dkt. no. 21.] Plaintiffs Trung Hua and Ronald Leimkuhler ("the Owners") filed their memorandum in opposition to the Motion on August 2, 2024, and the Association filed its reply on August 9, 2024. [Dkt. nos. 25, 27.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").

On August 19, 2024, an entering order was issued informing the parties of this Court's ruling on the Motion. [Dkt. no. 28.] The instant Order supersedes the entering order.

The Association's Motion is hereby granted in part and denied in part for the reasons set forth below. The Motion is granted insofar as the instant case is stayed pended the resolution of the appeal in the parallel state court case. The Motion is denied in all other respects.

<u>**BACKGROUND**</u>

The Owners filed their Complaint on October 16, 2023. [Dkt. no. 1.] Relevant to the instant Motion, they own Unit 3009-2 in the Makai Tower of the Waikiki Banyan condominium project ("the Unit" and "the Project"). [Complaint at ¶¶ 7-9.] The Association manages and operates the Project. [<u>Id.</u> at ¶ 7.] On August 9, 2021, after opening escrow for the purchase of the Unit, the Owners contacted the Association about registration and remodeling the Unit. The same day, Chiharu Boden ("Boden"), who is part of the Association's management, initially stated construction work on the Unit did not require Association approval. The Owners subsequently closed escrow, and they began remodeling the Unit on August 27, 2021. [<u>Id.</u> at ¶¶ 9-13.]

On September 14, 2021, a water line was punctured during the remodeling. [<u>Id.</u> at ¶ 15.] The next day, Boden reiterated that there was nothing the Owners had to register, but Jack Johnson ("Johnson") of the Association indicated a permit from the City and County of Honolulu ("the City") was required. <u>See</u> <u>id.</u> at ¶¶ 16-17. Between September 16, 2021 and

2

September 22, 2021, the Owners' contractor provided Bo Invanoff ("Invanoff") of the Association with information from an engineer, information from Honolulu Fire Protection, and the report of the City inspector, and the Owners received approval to complete their remodeling project. However, on September 22, 2021, Johnson told the Owners a permit was required. [Id. at ¶¶ 21-22.]

On October 1, 2021, the Association issued a Cease & Desist Order, demanding that all construction cease until the Owners obtained a permit. [Id. at ¶ 24.] The Owners applied for a permit to construct a partition to create a new bedroom space and to extend the sprinkler system. [Id. at ¶¶ 26, 33.] The Owners received a permit number on January 4, 2022, but the approval of the permit was still pending when the Complaint was filed. [Id. at ¶ 28.]

On February 23, 2022, the Association's property manager, Hawaiiana Management Company, Ltd. ("Hawaiiana"), demanded a copy of the Owners' permit or their permit application, and Hawaiiana threatened the Owners with a $500 per day fine. [Id. at ¶ 34.] The Owners allege the Association's Declaration, Bylaws, and House Rules (collectively "Governing Documents") do not authorize such a fine. [Id. at ¶ 35.] On March 18, 2022, Hawaiiana demanded the removal of the partition. [Id. at ¶ 38.]

3

The parties participated in mediation on November 8, 2022. According to the Owners, the parties discussed possible settlement terms, but no agreement on a settlement was reached. [Id. at ¶¶ 44-46.] On December 5, 2022, the Owners informed the mediator that they would not proceed with the mediation and/or any settlement. [Id. at ¶ 48.] The Owners acknowledge that they "agreed to [a] tentative, contingent possible settlement during the mediation," but they argue they only did so because they were afraid of the threatened fines, and they emphasize that they never signed a settlement agreement or a term sheet. [Id. at ¶¶ 50-51.]

On December 23, 2022, the Association filed a Motion to Enforce Settlement Agreement and for Sanctions ("Motion to Enforce") in the State of Hawai`i First Circuit Court ("state court").[1] [Id. at ¶ 53.] The Owners filed a memorandum in opposition to the Motion to Enforce on February 17, 2023, and the Association filed its reply on February 23, 2023. [Id. at ¶¶ 54-55.] No evidentiary hearing was conducted, but the state court held a hearing on the Motion to Enforce on February 28, 2023. The state court ruled that a series of emails between the parties' respective counsel constituted a binding settlement

_____

[1] The state court case cited in the Complaint is Ass'n of Apartment Owners of Waikiki Banyan v. Leimkuhler et al., 1CSP-22-0000323 ("State Court Case"). See Complaint at ¶ 53.

agreement, but the state court denied the Association's request for sanctions. [Id. at ¶¶ 56-57.] On April 24, 2023, the state court issued an order granting the Motion to Enforce in part and denying it in part ("4/24/23 Enforcement Order"). [Id. at ¶ 58.] An appeal was taken from the 4/24/23 Enforcement Order, and the appeal was pending when the Owners filed their Complaint in the instant case.[2] [Id. at ¶ 59.]

The Owners assert the following claims: a claim seeking a declaratory judgment that the $500 per day fine threatened by the Association violated Hawai`i Revised Statutes Section 514B-104(a)(11) ("Count I"); a claim seeking a declaratory judgment that the Association is violating Hawai`i Revised Statutes Section 514B-105(b) by unreasonably interfering with the Owners' use of the Unit ("Count II"); a claim seeking recission of the alleged settlement agreement on the ground that any agreement was fraudulently induced ("Count III"); and an

---

[2] As of the date of this Order, the appeal cited in the Complaint, Ass'n of Apartment Owners of Waikiki Banyan v. Leimkuhler et al., CAAP-23-0000351 ("State Court Appeal"), [Complaint at ¶ 59,] is still pending before the Hawai`i Intermediate Court of Appeals ("ICA"). The docket reflects that the State Court Appeal is a consolidated proceeding involving both CAAP-23-0000351 and CAAP-24-0000334. CAAP-24-0000334 is an appeal by the Owners from another order in the State Court Case, an April 4, 2024 Order Granting Applicant Association of Apartment Owners of Waikiki Banyan's Second Motion to Enforce Settlement Agreement and for Sanctions. See Ass'n of Apartment Owners of Waikiki Banyan v. Leimkuhler et al., CAAP-24-0000334, Notice of Appeal, filed 4/26/24 (dkt. no. 1).

unfair or deceptive acts or practices or acts ("UDAP") claim, pursuant to Hawai`i Revised Statutes Chapter 480, based upon the Association's false representation that it had the authority to impose a $500 per day fine ("Count IV").[3] [Id. at pgs. 11-17.]

The Owners pray for the following relief: declaratory relief as to Count I and Count II; special damages; civil penalties of $10,000 for each violation of Chapter 480 by the Association; treble damages; prejudgment interest; attorneys' fees and costs; and any other appropriate relief. [Id. at pgs. 17-18.]

Although the Motion is titled as a "Motion to Dismiss" and the Association requests dismissal of the Complaint, the Association brings the Motion pursuant to Federal Rule of Civil Procedure 12(c), which governs motions for judgment on the pleadings. See Motion at 2. The Association argues it is entitled to judgment on the pleadings pursuant to Rule 12(c) because: 1) Plaintiff's claims are precluded by the settlement agreement; 2) this action is either an impermissible de facto appeal of the state court's decision or it is a parallel proceeding that this Court should decline to exercise

---

[3] Plaintiffs' UDAP claim includes allegations that Plaintiff Ronald Leimkuhler is an elder under Hawai`i Revised Statutes Section 480-13, and therefore civil penalties under Hawai`i Revised Statutes Section 480-13.5 are warranted. [Complaint at ¶¶ 97-98.]

jurisdiction over; 3) if this Court exercises jurisdiction over the Owner's claims, Count III is insufficiently pled because it does not meet the heightened pleading standard for fraud claims; and 4) Count IV fails to state a claim because the Owners are not consumers for purposes of a Hawai`i Revised Statutes Section 480-2 claim. [Motion, Mem. in Supp. at 1-3.]

## **DISCUSSION**

### I.   **De Facto Appeal and the *Rooker-Feldman* Doctrine**

This Court turns first to the Association's arguments that the instant case is a de facto appeal of the State Court Case, [id. at 10-13,] and this Court lacks jurisdiction over the case under the Rooker-Feldman doctrine.[4] This district court has stated:

> The Ninth Circuit Court of Appeals has described the Rooker-Feldman doctrine as follows:
>
>> Rooker-Feldman is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments: If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal

---

[4] The Rooker-Feldman doctrine was established by the United States Supreme Court in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

> complaint must be dismissed for lack of
> subject matter jurisdiction.

Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th
Cir. 2003). "Essentially, the doctrine bars
state-court losers complaining of injuries caused
by state-court judgments rendered before the
district court proceedings commenced from asking
district courts to review and reject those
judgments." Henrichs v. Valley View Dev., 474
F.3d 609, 613 (9th Cir. 2007) (quotation
omitted). However, "[p]reclusion, not Rooker-
Feldman, applies when a federal plaintiff
complains of an injury that was not caused by the
state court, but which the state court has
previously failed to rectify." Id. at 614
(quotation and internal quotation omitted).

Levitz v. PNC Bank Nat'l Ass'n, Case No. 24-cv-00024-DKW-KJM,

2024 WL 5136685, at *3-4 (D. Hawai`i Dec. 17, 2024) (alteration

in Levitz).

> "Proceedings end for Rooker-Feldman purposes when
> the state courts finally resolve the issue that
> the federal court plaintiff seeks to relitigate
> in a federal forum, even if other issues remain
> pending at the state level." Mothershed [v.
> Justs. of Sup. Ct.], 410 F.3d [602,] 604 n.1
> [(9th Cir.), *amended on denial of reh'g*, 2005 WL
> 1692466 (9th Cir. July 21, 2005)]. In addition,
> courts "pay close attention to the **relief** sought
> by the federal-court plaintiff" in determining
> whether his action functions as a de facto
> appeal. Hooper v. Brnovich, 56 F.4th 619, 624
> (9th Cir. 2022) (quoting Cooper v. Ramos, 704
> F.3d 772, 777-78 (9th Cir. 2012)).

Plotkins v. Cnty. of Kaua`i, Fin. Div. Real Prop. Assessment,

CIV. NO. 24-00019 JMS-KJM, 2024 WL 1885791, at *2 (D. Hawai`i

Apr. 30, 2024). The issues that the state court addressed in the

4/24/23 Enforcement Order are not finally resolved because the

State Court Appeal is still pending and, even after the ICA issues a decision, one of the parties may seek a writ of certiorari from the Hawai`i Supreme Court. Accord Mothershed, 410 F.3d at 604 n.1 ("A **state supreme court's** interlocutory ruling will therefore trigger the Rooker-Feldman doctrine's applicability where such ruling constitutes the **final determination of an issue.**" (emphasis added) (citation omitted)); H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000) ("Thus, there is no final state judgment or order to which the Rooker-Feldman doctrine might relate and we need not reach the question of the doctrine's applicability to this action.").

Because there is no final order or judgment in light of the pending State Court Appeal, this Court cannot analyze the claims in the instant case under the Rooker-Feldman doctrine. To the extent that the Association seeks dismissal or judgment the pleadings based on the Rooker-Feldman doctrine, the Motion is denied.

## II.    ***Colorado River* Doctrine**

In the alternative, the Association argues the Complaint should be dismissed based on the Colorado River doctrine.[5] [Motion, Mem. in Supp. at 13-21.]

The Ninth Circuit has stated:

> "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Colorado River, 424 U.S. at 817, 96 S. Ct. 1236 (quoting McLellan [v. Carland], 217 U.S. [268,] 282, 30 S. Ct. 501 [(1910)]). However, the Supreme Court has identified several instances in which it is appropriate for a federal court to abstain from exercising its jurisdiction. See, e.g., id. at 813-17, 96 S. Ct. 1236 (discussing traditional abstention doctrines). As relevant here, in Colorado River, the Supreme Court recognized that in "exceptional circumstances," id. at 813, 96 S. Ct. 1236, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" can support a stay of federal litigation in favor of parallel state proceedings, id. at 817, 96 S. Ct. 1236 (alteration in original) (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183, 72 S. Ct. 219, 96 L. Ed. 200 (1952)).

Ernest Bock, LLC v. Steelman, 76 F.4th 827, 835-36 (9th Cir. 2023) (some alterations in original) (quoting Ernest Bock), *cert. denied*, 144 S. Ct. 554 (2024). Although it has similarities with abstention

---

[5] The Colorado River doctrine was established by the United States Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

doctrines, the <u>Colorado River</u> doctrine is not an abstention

doctrine. <u>Id.</u> at 836.

> [A] stay of federal litigation in favor of state
> court proceedings "is the exception, not the
> rule." <u>Colorado River</u>, 424 U.S. at 813, 96 S. Ct.
> 1236. "Only the clearest of justifications will
> warrant" a stay, <u>id.</u> at 819, 96 S. Ct. 1236, and
> the circumstances justifying a stay are
> "exceedingly rare," <u>Smith [v. Cent. Ariz. Water
> Conservation Dist.]</u>, 418 F.3d [1028,] 1033 [(9th
> Cir. 2005)].
>
> This court weighs eight factors to determine
> whether a <u>Colorado River</u> stay is justified:
>
>> (1) which court first assumed jurisdiction
>> over any property at stake; (2) the
>> inconvenience of the federal forum; (3) the
>> desire to avoid piecemeal litigation;
>> (4) the order in which the forums obtained
>> jurisdiction; (5) whether federal law or
>> state law provides the rule of decision on
>> the merits; (6) whether the state court
>> proceedings can adequately protect the
>> rights of the federal litigants; (7) the
>> desire to avoid forum shopping; and
>> (8) whether the state court proceedings will
>> resolve all issues before the federal court.
>
> <u>R.R. Street [& Co. v. Trans. Ins. Co.]</u>, 656 F.3d
> [966,] 978-79 [(9th Cir. 2011)] (citing <u>Holder
> [v. Holder]</u>, 305 F.3d [854,] 870 [(9th Cir.
> 2002)]). "The factors are not a 'mechanical
> checklist.' We apply the factors 'in a pragmatic,
> flexible manner with a view to the realities of
> the case at hand. The weight to be given to any
> one factor may vary greatly from case to case.'"
> <u>[United States v.] State Water Res. Control Bd.</u>,
> 988 F.3d [1194,] 1203 [(9th Cir. 2021)]
> (citations omitted) (quoting <u>Moses Cone [Mem.'l
> Hosp. v. Mercury Constr. Corp.]</u>, 460 U.S. [1,]
> 16, 21, 103 S. Ct. 927 [(1983)]). "Some factors
> may not apply in some cases," but in other cases,
> "a single factor may decide whether a stay is
> permissible." <u>Id.</u> (cleaned up). "The underlying

11

principle guiding this review is a strong
presumption **against** federal abstention." <u>Seneca
[Ins. Co. v. Strange Land, Inc.]</u>, 862 F.3d [835,]
842 [(9th Cir. 2017)] (emphasis added). "Any
doubt as to whether a factor exists should be
resolved against a stay, not in favor of one."
<u>Travelers Indem. Co. v. Madonna</u>, 914 F.2d 1364,
1369 (9th Cir. 1990).

<u>Id.</u> at 836–37.

A.   **Eighth Factor (Parallelism)**

Parallelism is a threshold requirement for a
<u>Colorado River</u> stay:

When a district court decides to dismiss or
stay under <u>Colorado River</u>, it presumably
concludes that the parallel state-court
litigation will be an adequate vehicle for
the complete and prompt resolution of the
issues between the parties. If there is any
substantial doubt as to this, it would be a
serious abuse of discretion to grant the
stay or dismissal at all. Thus, the decision
to invoke <u>Colorado River</u> necessarily
contemplates that the federal court will
have nothing further to do in resolving any
substantive part of the case, whether it
stays or dismisses.

<u>Moses Cone</u>, 460 U.S. at 28, 103 S. Ct. 927
(citations omitted). The Court reiterated that "a
district court normally would expect the order
granting the [<u>Colorado River</u>] stay to settle the
matter for all time." <u>Gulfstream Aerospace Corp.
v. Mayacamas Corp.</u>, 485 U.S. 271, 277, 108 S. Ct.
1133, 99 L. Ed. 2d 296 (1988).[6] "[T]he granting
of a <u>Colorado River</u> [stay] necessarily implies an
expectation that the state court will resolve the
dispute." <u>Id.</u> at 278, 108 S. Ct. 1133. Applying
these principles, we have recognized that
"[p]arallelism is necessary but not sufficient to

---

[6] <u>Gulfstream</u> was superseded on other grounds by the Federal
Arbitration Act. <u>See, e.g.</u>, <u>Jackson v. Amazon.com, Inc.</u>, 65
F.4th 1093, 1098 (9th Cir. 2023).

counsel in favor of abstention." Seneca, 862 F.3d
at 845. But "exact parallelism . . . is not
required. It is enough if the two proceedings are
'substantially similar.'" Nakash [v. Marciano],
882 F.2d [1411,] 1416 [(9th Cir. 1989)]
(citations omitted).

Id. at 838 (some alterations in Ernest Bock).

The Ninth Circuit previously held that "suits were
sufficiently parallel because they concerned the same relevant
conduct and named the same pertinent parties. The parallelism
requirement was met even though additional parties were named in
the state suit, the federal suit included additional claims, and
the suits arguably focused on different aspects of the dispute."
Montanore Mins. Corp. v. Bakie, 867 F.3d 1160, 1170 (9th Cir.
2017) (citing Nakash, 882 F.2d at 1416-17). In Ernest Bock, the
Ninth Circuit recognized that Nakash and Bakie could be
interpreted as permitting a Colorado River stay even where the
state court proceeding does not fully resolve the federal court
case. Ernest Bock, 76 F.4th at 839. However, in other cases, the
Ninth Circuit "expressly held that a 'substantial doubt' about
whether continued federal litigation would be necessary after
resolution of state proceedings **precludes** a stay." Id. (emphasis
in Ernest Bock) (citing Intel Corp. v. Advanced Micro Devices,
Inc., 12 F.3d 908, 912-13 (9th Cir. 1993)).

The Ninth Circuit considered the cases that affirmed
the Intel analysis, as well as case law from other circuits. Id.

13

at 840-41. The Ninth Circuit ultimately concluded that <u>Intel</u> was
more consistent with <u>Moses Cone</u> and held that: "When one
possible outcome of parallel state court proceedings is
continued federal litigation, we find a 'substantial doubt' that
the state court action will provide a 'complete and prompt
resolution of the issues,' because the federal court may well
have something 'further to do.'" <u>Id.</u> at 841 (quoting <u>Moses Cone</u>,
460 U.S. at 28, 103 S. Ct. 927).

    In the instant case, the issues presented in the
Owners' fraudulent inducement claim, their UDAP claim, and their
claim seeking a declaratory judgment that the Association
violated Hawai`i Revised Statutes Section 514B-104(a)(11) are
all before the ICA in the State Court Appeal. <u>See generally</u>
Motion, Declaration of Counsel, Exh. 6 (the Owners' opening
brief in the State Court Appeal). The State Court Appeal does
not expressly address Hawai`i Revised Statutes Section 514B-
105(b), but the outcome of Count II, which seeks a declaratory
judgment that Section 514B-105(b) is being violated, will
necessarily follow the outcome of the other claims in this case.
The State Court Appeal will resolve all of the substantive
issues in this case. If the Association prevails in the State
Court Appeal, they will prevail on all of the Owner's claims in
this case. If the Owners prevail in the State Court Appeal, they
will prevail on the merits of their claims in this case, and the

only issue remaining would be the determination of the
appropriate remedies. Therefore, the parallelism factor is met.

    B.    **Other Factors**

        The first factor – which court first assumed
jurisdiction over the property at issue – is neutral because,
although the issues in this case and the state court proceedings
relate to the Owners' Unit, neither court has been asked to
assume jurisdiction over the Unit. The second factor – the
inconvenience of the federal forum – is either neutral or
inconsequential because Defendants have made no showing that
litigating in this district court is inconvenient. See Ernest
Bock, 76 F.4th at 838 n.12 ("We also agree that factors one
[and] two . . . are neutral or inconsequential. Neither the
federal nor the state court has exercised jurisdiction over
property, and . . . . [t]here is also no indication that the
federal forum is inconvenient.").

        When this Court considers the third factor, avoiding
duplicative litigation, relevant factors include duplicating
judicial efforts, wasting judicial resources, and the
possibility of inconsistent results, which would cause confusion
between the parties. See id. at 837. "The mere possibility of
piecemeal litigation does not constitute an exceptional
circumstance. Instead, the case must raise a special concern
about piecemeal litigation, which can be remedied by staying or

15

dismissing the federal proceeding." R.R. St., 656 F.3d at 979 (some citations and internal quotation marks omitted) (citing Moses H. Cone, 460 U.S. at 20-21, 103 S. Ct. 927 (noting that a stay of the federal suit would not alleviate the possibility that some claims would be subject to arbitration while others were decided in court)). This factor weighs in favor of dismissal or stay in this case because, if the instant case and the State Court Appeal proceed simultaneously, there would not only be piecemeal litigation, there would be a duplication of efforts and a significant risk of inconsistent results because deciding the merits of the claims in the instant case would require this Court to rule upon the same issues that are before the ICA in the State Court Appeal.

As to the fourth factor, the order in which jurisdiction was obtained, "courts are instructed not simply to compare filing dates, but to analyze the progress made in each case." Ernest Bock, 76 F.4th at 837-38 (citation and quotation marks omitted). As noted in the Background section above, the Association filed the Motion to Enforce on December 23, 2022, the state court issued an order ruling on the Motion to Enforce on April 23, 2023, and the Owners initiated the State Court Appeal on May 17, 2023. The Owners' Complaint in the instant case was not filed until October 16, 2023. Thus, based both on

the filing dates and the progress of the litigation, this factor
weighs in favor of dismissal or stay.

The fifth factor, which addresses the source of rule
of decision, is either neutral or weighs in favor of dismissal
or stay because the instant case only raises state law claims.

As to the sixth factor, whether the state court case
will adequately protect the litigant's rights, nothing in the
record suggests a "reason to suspect that either court is
incapable of fairly adjudicating the issues before it." See id.
at 837 n.12. Therefore, this factor is neutral or
inconsequential.

> [T]he seventh factor in our Colorado River test
> is "the desire to avoid forum shopping." R.R.
> St., 656 F.3d at 979. "In the Colorado River
> context, [we have] held that forum shopping
> weighs in favor of a stay when the party opposing
> the stay seeks to avoid adverse rulings made by
> the state court or to gain a tactical advantage
> from the application of federal court rules."
> Travelers Indem. Co. v. Madonna, 914 F.2d 1364,
> 1371 (9th Cir. 1990). "If [the party] pursued
> suit in a new forum after facing setbacks in the
> original proceeding, this factor may weigh in
> favor of a stay." Montanore Minerals, 867 F.3d at
> 1169 (citation and internal quotation marks
> omitted). However, "[i]t typically does not
> constitute forum shopping where a party acted
> within his rights in filing a suit in the forum
> of his choice." Seneca Ins., 862 F.3d at 846
> (internal quotation marks and citation omitted);
> see also Holder, 305 F.3d at 869 (deeming it
> important that granting a stay "would deprive
> [the husband] of his choice of forum" because the
> husband chose to file his Hague Convention claim
> in federal court).

The court also considers a lapse in time in determining whether a party has engaged in forum shopping. For example, when a party waits three-and-a-half years, see Nakash, 882 F.2d at 1417, or two-and-a-half years, see Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1259 (9th Cir. 1988), after initially filing in state court, that can weigh in favor of a stay.

There is a strong presumption that the presence of an additional claim in the federal suit means that Colorado River is inapplicable. However, because of the concern over forum shopping, there might be rare circumstances in which a district court could properly issue a partial Colorado River stay. If there is clear-cut evidence of forum shopping — meaning the party filing the federal suit clearly added a new claim to avoid state court adjudication — then the district court may analyze the claims separately and decide if a partial stay is appropriate. When there is concurrent federal and state court jurisdiction over the additional claim (as opposed to exclusive federal jurisdiction), there is stronger evidence of forum shopping, as the plaintiff in the federal case could have pursued that additional claim in state court.

United States v. State Water Res. Control Bd., 988 F.3d 1194, 1206–07 (9th Cir. 2021) (alterations in State Water Res.).

In the instant case, the Owners filed suit after the state court ruled against them on the Association's Motion to Enforce, the Owners do not assert any federal claims, and the instant case raises issues that are already before the ICA in the State Court Appeal. Further, to the extent that the Owners believed they had affirmative claims for relief in addition to their defenses to the Motion to Enforce, the Owners could have

18

filed an action asserting those claims as soon as the
Association filed the Motion to Enforce. The Owners did not do
so and instead filed their Complaint almost ten months after the
Association filed the Motion to Enforce. This Court therefore
finds that the forum shopping factor weighs in favor of
dismissal or stay.

      **C.**    <u>**Ruling**</u>

      All of the <u>Colorado River</u> factors either are neutral
or inconsequential or they weigh in favor of dismissal or stay.
Although the claims in the instant case raise issues that are
before the ICA in the State Court Appeal, the Owners will not be
able to obtain any affirmative relief even if the ICA rules in
their favor. Therefore, a stay rather than dismissal is
warranted under the <u>Colorado River</u> doctrine. The Association's
Motion is granted insofar as this Court concludes that the
<u>Colorado River</u> doctrine applies, but the Motion is denied
insofar as this Court stays the instant case and declines to
dismiss the case.

**III. <u>Other Issues</u>**

      In light of the stay, this Court declines to address
the other issues raised in the Motion. The Motion is denied as
to those issues, but the denial is without prejudice to the
filing of another motion, if appropriate, after the State Court
Appeal is resolved.

## CONCLUSION

For the foregoing reasons, the Association's May 29, 2024 Motion to Dismiss Trung Hua and Ronald Leimkuhler's Complaint, Filed Herein on October 16, 2023 is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as this Court concludes that the Colorado River doctrine applies to the Owner's claims in the instant case. The Motion is DENIED as to the Association's request for dismissal or judgment on the pleadings under the Colorado River doctrine. Instead, this Court STAYS the instant case pending the resolution of the State Court Appeal. The Motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 12, 2025.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**TRUNG HUA, ET AL. VSL ASSOCIATION OF APARTMENT OWNERS OF WAIKIKI BANYAN; CV 23-00424 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S COMPLAINT, FILED HEREIN ON OCTOBER 16, 2023**